# EXHIBIT 5

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com

Brian J. Schall
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile:  (310) 388-0192
brian@schallfirm.com

*Counsel for Plaintiff Nicholas Tiedt*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:24-cv-02898

NICHOLAS TIEDT, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

PARAGON 28, INC., ALBERT DACOSTA, STEPHEN M. DEITSCH, KRISTINA WRIGHT, and ERIK MICKELSON,

     Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

---

**TABLE OF CONTENTS**

Page

I.  NATURE OF THE ACTION ................................................................................... 1

II.  JURISDICTION AND VENUE ............................................................................ 3

III.  PARTIES ................................................................................................................. 4

IV.  SUBSTANTIVE ALLEGATIONS ....................................................................... 6

    A.  Materially False and Misleading Statements Issued During the
    Class Period .................................................................................................. 6

V.  THE TRUTH BEGINS TO EMERGE ................................................................ 10

VI.  ADDITIONAL SCIENTER ALLEGATIONS ................................................... 14

VII.  PLAINTIFF'S CLASS ACTION ALLEGATIONS ........................................... 15

FIRST CLAIM FOR RELIEF For Violations of Section 10(b) And Rule 10b-5
    Promulgated Thereunder Against All Defendants ................................................. 17

SECOND CLAIM FOR RELIEF Violations of Section 20(a) of the Exchange Act
    Against the Individual Defendants ......................................................................... 19

VIII.  PRAYER FOR RELIEF ...................................................................................... 20

IX.  JURY TRIAL DEMANDED ............................................................................... 21

Plaintiff Nicholas Tiedt ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Paragon 28, Inc. ("Paragon" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.      NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Paragon common stock between May 5, 2023 and September 20, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Paragon is a medical device company specializing in orthopedic foot and ankle solutions. Founded in 2010, the company has established itself as a leader in the industry by offering innovative products and technologies designed to improve patient outcomes and enhance surgical procedures. With a focus on innovation and quality, Paragon 28 has developed a comprehensive portfolio of products, including plating systems, screw systems, nails, staples, and implants. These products are designed to address a wide range of foot and ankle conditions, such as fractures, deformities, and arthritis. By providing surgeons with the necessary tools and techniques, Paragon 28 aims to improve patient care and reduce recovery times.

3.      During the Class Period, Paragon and its senior management (identified as "Individual Defendants" below) repeatedly assured investors that the Company's (a) financial statements did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading, and (b) its disclosure controls and procedures and internal control over financial reporting "provide[s] reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles."

4.      The accuracy of these statement began to come into question on April 4, 2024, when Paragon issued a press release announcing that Defendant Deitsch resigned and the Company's Audit Committee Chair (Kristina Wright) stepped in as interim CFO effective April 3, 2024.

5.      This news sent the price of Paragon shares down $1.86 (-15%) that day.

6.      Then, after the market closed on August 8, 2024, Paragon filed amended financial statements on Form 10-K/A and Form 10-Q/A. The Company revealed that it was restating previously filed financial statements because it "identified errors in the calculation of its excess and obsolete inventory, as well as its accounting for inventory variances, which resulted in a net overstatement of Inventories, net as of March 31, 2023, June 30, 2023, September 30, 2023, December 31, 2023, and March 31, 2024 and a net understatement in Cost of goods sold for the respective interim periods ended on such dates and for the fiscal year ended December 31, 2023."

7.      Paragon also revealed that it determined it had material weaknesses in its internal control over financial reporting and that its disclosure controls and procedures were not effective.

8.      In addition, Paragon specifically admitted that it overstated a key non-GAAP metric (Adjusted EBITDA), overstated its net inventories, understated its cost of goods sold, overstated its gross profit, understated its operating loss, and it understated its net loss dating back to its March 31, 2023 financial statements which were first filed on May 4, 2023.

9.      This news sent the price of Paragon shares down $1.67 (-20%) on August 9, 2024, wiping out nearly $140 million of shareholder value in a single day.

10.     Then, after the market closed on September 20, 2024, Paragon disclosed the abrupt departure of Defendant Erik Mickelson ("Mickelson"), the Company's Chief Accounting Officer.

11.     This news sent the price of Paragon shares down $0.30 (-4.3%) on September 23, 2024.

12.     As alleged more fully below, throughout the Class Period Defendants made materially false and misleading and failed to disclose that Paragon: (a) understated its Adjusted EBITDA losses; (b) overstated its net inventories; (c) understated required provisions for excess and obsolete inventory; (d) understated its cost of goods sold; (e) overstated gross profit; (f) understated operating loss; (g) understated net loss; (h) lacked adequate disclosure controls and procedures and internal control over financial reporting; (i) would be required to restate its financial statements to conform with generally accepted accounting principles; and (j) as a result of the foregoing Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## II.      JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

-3-

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

16. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

### III. PARTIES

17. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Paragon 28 securities during the Class Period and was economically damaged thereby.

18. Defendant Paragon 28 is a technology company that is focused on fiber optics. It creates products targeted towards the aerospace, automotive, and communications industries, among others.

19. Paragon 28 is incorporated in Delaware and its principal executive offices are located at 14445 Grasslands Drive, Englewood, CO 80012. The Company's common stock trades on the NYSE exchange under the ticker symbol "FNA."

20. Defendant Albert DaCosta ("DaCosta") served as the Company's Chief Executive Officer ("CEO") and President during the Class Period.

21. Defendant Stephen M. Deitsch, ("Deitsch") served as the Company's Chief Financial Officer ("CFO") until Paragon announced the replacement of him effective April 3, 2024

following his March 29, 2024 decision to retire just two days before the close of Paragon's 1Q 2024 books.

22. Defendant Kristina Wright ("Wright") served as the Company's interim CFO from April 3, 2024 through August 5, 2024. Wright has been a member of Paragon's Board since 2021 and was Chair of the Company's Audit Committee and a member of the Nominating and Corporate Governance Committee.

23. Defendant Erik Mickelson ("Mickelson") served as the Company's Chief Accounting Officer during the Class Period until Paragon announced his departure on September 20, 2024.

24. Defendants DaCosta, Deitsch, Wright, and Mickelson are collectively referred to herein as the "Individual Defendants."

25. Each of the Individual Defendants:

1. directly participated in the management of the Company;

2. was directly involved in the day-to-day operations of the Company at the highest levels;

3. was privy to confidential proprietary information concerning the Company and its business and operations;

4. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

5. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

6. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

7.    approved or ratified these statements in violation of the federal securities laws.

26.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

27.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Paragon 28 under *respondeat superior* and agency principles.

28.    Defendant Paragon and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Materially False and Misleading Statements Issued During the Class Period

29.    The Class Period begins on May 5, 2023, the day after Paragon issued a press release, after market hours, announcing its Q1 2023 financial results for the quarter ended March 31, 2023. The Company said that "Net loss was $9.1 million for the first quarter of 2023, compared to net loss of $9.2 million for the first quarter of 2022" and "Adjusted EBITDA was a $1.4 million loss for the first quarter of 2023, a 57.1% improvement, compared to a $3.3 million loss in the first quarter of 2022."

30.    On May 4, 2023, the Company also filed its quarterly report on Form 10-Q for the period ended March 31, 2023. The Company reported that its: (a) net inventories were $69.174 million; (b) provision for excess and obsolete inventory was $293 thousand; (c) cost of goods sold was $8.906 million; (d) gross profit was $43.13 million; (e) operating loss was $7.739 million; and (f) net loss was $9.052 million.

31.    This Form 10-Q attached Sarbanes-Oxley certifications by Defendants DaCosta and Deitsch assuring investors that: (a) the "report does not contain any untrue statement of a

-6-

material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" (b) they "Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;" and (c) they "Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles[.]"

32.     On August 2, 2023, Paragon issued a press release announcing its Q2 2023 financial results. The Company said in part that "Net loss was $10.9 million for the second quarter of 2023, an increase of 13.5%, compared to a net loss of $9.6 million for the second quarter of 2022[]" and "Net loss was $20.0 million for the six months ended June 30, 2023, an increase of 5.9%, compared to net a loss of $18.8 million for the six months ended June 30, 2022."

33.     On August 2, 2023, the Company also filed its quarterly report on Form 10-Q for the period ended June 30, 2023. The Company reported that its: (a) net inventories were $85.225 million; (b) provision for excess and obsolete inventory was reversed by $205 thousand; (c) cost of goods sold was $8.858 million; (d) gross profit was $42.151 million; (e) operating loss was $9.359 million; and (f) net loss was $10.898 million. This Form 10-Q attached Sarbanes-Oxley certifications by Defendants DaCosta and Deitsch assuring investors of the same matters alleged in Paragraph 28 above.

34.     On November 7, 2023, Paragon issued a press release announcing its Q3 2023 financial results and reaffirming its 2023 net revenue guidance. The Company said in part that "Net loss was $8.3 million for the third quarter of 2023, a decrease of 14.3%, compared to a net loss of $9.7 million for the third quarter of 2022. Net loss was $28.3 million for the nine months ended September 30, 2023, a decrease of 1%, compared to net a loss of $28.6 million for the nine months ended September 30, 2022."

35.     On November 8, 2023, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2023.  The Company reported that its: (a) net inventories were $94.38 million; (b) provision for excess and obsolete inventory for the nine months ended September 30, 2023 was $2.053 million; (c) cost of goods sold was $10.394 million; (d) gross profit was $42.389 million; (e) operating loss was $8.981 million; and (f) net loss was $8.332 million. This Form 10-Q attached Sarbanes-Oxley certifications by Defendants DaCosta and Deitsch assuring investors of the same matters alleged in Paragraph 28 above.

36.     On February 29, 2024, Paragon issued a press release announcing its Q4 and FY financial results. The Company said in part that: (a) "Net loss was $47.8 million for the full year 2023, compared to a net loss of $67.3 million for the full year 2022[;]"  (b) "Gross profit margin was 79.9% for the full year 2023, compared to 82.1% for the full year 2022[;]" and (c) "Adjusted EBITDA for the full year 2023, negatively impacted by the $4.0 million of inventory write downs during the fourth quarter 2023, was a $9.7 million loss compared to a $10.7 million loss for the full year 2022."

37.     The Company also filed its annual financial statements on Form 10-K on February 29, 2024. The Company reported that its: (a) net inventories were $98.062 million; (b) provision for excess and obsolete inventory was -$352 thousand; (c) cost of goods sold was $43.598 million;

(d) gross profit was $172.791 million; (e) operating loss was $37.309 million; and (f) net loss was $47.841 million. This Form 10-K attached Sarbanes-Oxley certifications by Defendants DaCosta and Deitsch assuring investors of the same matters alleged in Paragraph 28 above.

38. On May 8, 2024, Paragon issued a press release announcing its Q1 2024 financial results. The Company said in part that: (a) "Net loss was $15.2 million for the first quarter of 2024, compared to net loss of $9.1 million for the first quarter of 2023[;]" (b) "Gross profit margin was 80.0% for the first quarter of 2024 compared to 82.9% in the first quarter of 2023[;]" and (c) "Adjusted EBITDA was a $5.5 million loss for the first quarter of 2024, a $4.1 million decrease, compared to a $1.4 million loss in the first quarter of 2023."

39. On May 8, 2024, the Company also filed its quarterly report on Form 10-Q for the period ended March 31, 2024. The Company reported that its: (a) net inventories were $104.298 million; (b) provision for excess and obsolete inventory was $471 thousand; (c) cost of goods sold was $12.186 million; (d) gross profit was $48.896 million; (e) operating loss was $12.903 million; and (f) net loss was $15.234 million. This Form 10-Q attached Sarbanes-Oxley certifications by Defendants DaCosta and Wright assuring investors of the same matters alleged in Paragraph 28 above.

40. The statements contained in Paragraphs 26 - 36 above were materially false and misleading and failed to disclose that Paragon: (a) understated its Adjusted EBITDA losses; (b) overstated its net inventories; (c) understated required provisions for excess and obsolete inventory; (d) understated its cost of goods sold; (e) overstated gross profit; (f) understated operating loss; (g) understated net loss; (h) lacked adequate disclosure controls and procedures and internal control over financial reporting; (i) would be required to restate its financial statements to conform with generally accepted accounting principles; and (j) as a result of the foregoing

Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## V. THE TRUTH BEGINS TO EMERGE

41. On April 4, 2024, Paragon issued a press release announcing that Defendant Deitsch resigned and the Company's Audit Committee Chair (Kristina Wright) stepped in as interim CFO effective April 3, 2024.

42. This news sent the price of Paragon shares down $1.86 (-15%) that day.

43. Then, after the market closed on August 8, 2024, Paragon filed its amended financial statements on Form 10-K/A and on Form 10-Q/A that revealed the extent of the Company's financial misstatements and the problems with its Sarbanes-Oxley certifications alleged above.

44. Paragon said in its 10-K/A that it "identified errors in the calculation of its excess and obsolete inventory, as well as its accounting for inventory variances, which resulted in a net overstatement of Inventories, net as of March 31, 2023, June 30, 2023, September 30, 2023, December 31, 2023, and March 31, 2024 and a net understatement in Cost of goods sold for the respective interim periods ended on such dates and for the fiscal year ended December 31, 2023."

45. The Company admitted in its Form 10-K/A filing that its previously disseminated financial statements must be restated. More specifically, the Company said it needed to restate its 2022 and 2023 financial statements in its SEC filings. For the year ended December 31, 2023, it said that it overstated its inventories as of March 31, 2023, June 30, 2023, September 30, 2023, December 31, 2023, and March 31, 2024, "and a net understatement in Cost of goods sold for the respective interim periods ended on such dates and for the fiscal year ended December 31, 2023:

> Subsequent to the issuance of both the Company's consolidated financial statements as of and for the year ended December 31, 2023 and the Company's unaudited interim condensed consolidated financial statements

as of and for the fiscal quarter ended March 31, 2024, the Company identified errors in the calculation of its excess and obsolete inventory, as well as its accounting for inventory variances, which resulted in a net overstatement of Inventories, net as of March 31, 2023, June 30, 2023, September 30, 2023, December 31, 2023, and March 31, 2024 and a net understatement in Cost of goods sold for the respective interim periods ended on such dates and for the fiscal year ended December 31, 2023.

In filing this Amended 2023 Annual Report, the Company is restating its previously issued audited consolidated financial statements and related notes as of and for the year ended December 31, 2023, as well as unaudited condensed consolidated financial statements included in the Company's Quarterly Reports on Form 10-Q as of and for the quarterly and year-to-date periods ended March 31, 2023, June 30, 2023, and September 30, 2023, respectively, which have been restated to correct the errors in the calculation of its excess and obsolete inventory, as well as its accounting for inventory variances (the "Misstatements"), along with other immaterial accounting and disclosure errors that when aggregated with the Misstatements, are material in respect to the Original 2023 Annual Report (refer to Note 3. Restatement of Previously Issued Consolidated Financial Statements and Note 18. Quarterly Financial Data (Unaudited) to our financial statements included in Part II, Item 8 of this Amended 2023 Annual Report for additional information). This Amended 2023 Annual Report also contains our audited annual financial statements as of and for the year ended December 31, 2022 which have been revised to correct certain accounting errors that when aggregated are not material to those financial statements. In addition, we intend to file an amendment (such report, together with this Amendment No. 1, the "Amended Reports") to the Company's Quarterly Report on Form 10-Q for the fiscal quarter ended March 31, 2024, originally filed with the SEC on May 8, 2024 ("Original Form 10-Q" and together with the Original Form 10-K, the "Original Reports"), to account for the Misstatements during the periods presented therein and to restate our unaudited condensed consolidated financial statements for the quarterly period ended March 31, 2024. All material restatement information that relates to the Misstatements will be included in the Amended Reports, and we do not intend to separately amend other filings that the Company has previously filed with the SEC. As a result, such prior reports should no longer be relied upon.

46. The Company revealed that for the year ended December 31, 2023 it: (a) understated its Adjusted EBITDA loss by $8.374 million or 86.3%; (b) overstated its net inventories by $8.016 million or almost 9%; (c) understated its provision for excess and obsolete

inventory by \$4.389 million or about 108%; (d) understated cost of goods sold by \$8.356 million or over 19%; (e) overstated its gross profit by \$8.356 million or almost 5%; (f) understated its operating loss by \$8.356 million or over 22%; and (g) understated its net loss by \$9.693 million or over 20%. In addition, the Company reduced its gross profit margin for the year from its previously reported 79.9% to 76%.

47.     The Company revealed that as of September 30, 2023 it: (a) overstated its net inventories by \$5.252 million or almost 6%; (b) understated its provision for excess and obsolete inventory for the nine months ended September 30, 2023 by \$1.151 million or 56%; (c) understated its cost of goods sold by \$1.528 million or 14.7% [for the nine months ended September 30, 2023 \$5.592 million or almost 20%]; (d) overstated its gross profit by \$1.528 million or 3.7% [for the nine months ended September 30, 2023 \$5.592 million or 4.6%]; (e)  understated its operating loss by \$1.528 million or 17% [for the nine months ended September 30, 2023 \$5.592 million or about 21%]; and (f) understated its net loss by \$2.819 million or 33.8% [for the nine months ended September 30, 2023 \$6.929 million or 24.5%].

48.     The Company revealed that as of June 30, 2023 it: (a) it overstated its net inventories by \$3.724 million or about 4.5%; (b) understated its provision for excess and obsolete inventory for the six months ended June 30, 2023 by \$1.128 million or 122%; (c) understated its cost of goods sold by \$2.741 million or 31% [for the six months ended June 30, 2023 \$4.064 million or about 22.8%]; (d) overstated its gross profit by \$2.741 million or 6.9% [for the six months ended June 30, 2023 \$4.064 million or 5%]; (e)  understated its operating loss by \$2.741 million or 29.2% [for the six months ended June 30, 2023 \$4.064 million or 23.7%]; and (f) understated its net loss by \$2.35 million or 21.6% [for the six months ended June 30, 2023 \$4.11 million or 20%].

-12-

49. The Company revealed that as of March 31, 2023 it: (a) overstated its net inventories by $983 thousand or 1.4%; (b) understated its cost of goods sold by $1.323 million or 14.8%; (c) overstated its gross profit by $1.323 million or 3.2%; (d) understated its operating loss by $1.323 million or 17%; and (e) understated its net loss by $1.76 million or 19.2%.

50. The Company also made certain, albeit quantitatively immaterial, adjustments to its previously filed financial reports for the quarterly periods ended March 31, 2022, June 30, 2022, and September 30, 2022, and for the year ended December 31, 2022.

51. The 10-K/A also added that "we have identified material weaknesses in the Company's internal control over financial reporting that caused our internal control over financial reporting to be ineffective as of December 31, 2023 in connection with the restatement of our Amended 2023 Annual Report[]" and "our disclosure controls and procedures were not effective as of December 31, 2023, March 31, 2024 and June 30, 2024 for the same reason."

52. On August 8, 2024, in addition to filing its Form 10-K/A, the Company filed amended financial statements for the quarter ended March 31, 2024 on Form 10-Q/A. The Company revealed that it: (a) understated its Adjusted EBITDA loss by $2.2 million or 40%; (b) overstated net inventories by $9.672 million or 10.2%; (c) understated its provision for excess and obsolete inventories by $2.411 million or 83.6%; (d) understated cost of goods sold by $1.656 million or 13.6%;  (e) overstated gross profit by $1.656 million or 3.5%; (f) understated its operating loss by $2.223 million or 18.4%; and (g) understated its net loss by $2.165 million or 14.2%.

53. The 10-Q/A also added that "our disclosure controls and procedures were not effective as of March 31, 2024, as a result of the material weaknesses in our internal control over financial reporting[.]"

54.    The corrective disclosures alleged in Paragraphs 43 - 53 drove the price of the Company's shares down $1.67 (-20%) on August 9, 2024, damaging Plaintiff and the Class.

55.    Then, after the market closed on September 20, 2024, Paragon revealed that its Chief Accounting Officer, Defendant Mickelson, stepped down while maintaining that his departure was not the result "of any issue, concern or disagreement regarding the Company's accounting or internal control over financial reporting."

56.    This news sent the price of the Company's shares down $0.30 (-4.3%) on September 23, 2024.

## VI.    ADDITIONAL SCIENTER ALLEGATIONS

57.    Paragon and the Individual Defendants were fully aware of the need to ensure the Company's financial statements, including without limitation, its inventories and excess and obsolete inventories accounts, must be prepared in conformity with generally accepted accounting principles. Instead, Defendants knowingly filed the false and misleading financial statements alleged above.

58.    On February 29, 2024, Paragon revealed in its Form 10-K filed that day that the Company's auditor, Deloitte & Touche LLP, specifically communicated to Paragon and the Individual Defendants a "Critical Audit Matter" arising during its FY 2023 audit– namely, "Inventories – Excess and Obsolete Inventories." Deloitte noted that the critical audit matter was required to be communicated to Paragon because it "relate[d] to accounts or disclosures that are material to the financial statements." Deloitte also noted that "[a] significant decrease in product demand or the development of new products could result in an increase in the amount of excess inventory on hand, which could lead to additional charges for excess and obsolete inventory." Deloitte also said, "[w]e identified management's estimate of excess and obsolete inventories as a critical audit matter because of the high degree of subjectivity involved in developing the estimates

-14-

and sensitivity related to changes in key assumptions including length of product life cycles." By communicating the critical audit matter Deloitte did not provide a separate opinion on the critical audit matter or on the accounts or disclosures to which it related.

## VII.   PLAINTIFF'S CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired the Company's securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

60.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

61.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

62.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and;

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

65.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

66. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

67. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## FIRST CLAIM FOR RELIEF

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

68. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

70. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to

-17-

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

72.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

73.     Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

-18-

74. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

75. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

76. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

77. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## SECOND CLAIM FOR RELIEF

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

78. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

-19-

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

80.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

81.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

A.     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B.      awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

C.      awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## IX.    JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 18, 2024                Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Reed R. Kathrein*
     Reed Kathrein
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com

Brian J. Schall
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile:  (310) 388-0192
brian@schallfirm.com

*Counsel for Plaintiff Nicholas Tiedt*

-21-

Docusign Envelope ID: 03D7CF6A-7F17-4DF3-995E-145E31E343EC

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

I, Nicholas Tiedt, duly certify and say, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint and authorized its filing.

2.      I did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      My transaction(s) in Paragon 28, Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5.      Within the last three years, I have not sought to serve or served as a class representative in any federal securities fraud case except in this Action.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this ___ day of October, 2024.

10/17/2024

DocuSigned by:

*Nick Tiedt*

364710A5A90E4FA...

Nicholas Tiedt

Docusign Envelope ID: 03D7CF6A-7F17-4DF3-995E-145E31E343EC

**Nicholas Tiedt - Paragon 28, Inc. (FNA) Transactions**
**Class Period 05/05/23 - 09/20/24**

**P U R C H A S E S**

| Date | Shares | Share Price |
|------|--------|-------------|
| 03/27/24 | 10,200 | $9.4662 |
| 03/28/24 | 12,000 | $9.6237 |
| 03/28/24 | 12,750 | $9.8066 |
| 04/01/24 | 10,000 | $11.0485 |
| 05/13/24 | 3,750 | $8.2002 |
| 05/13/24 | 8,000 | $8.1863 |
| 05/14/24 | 8,000 | $8.2560 |
| 05/22/24 | 6,000 | $7.7679 |
| 05/22/24 | 5,000 | $7.7378 |
| 05/28/24 | 6,000 | $7.8700 |
| 06/25/24 | 9,000 | $5.9882 |
| 06/26/24 | 13,000 | $6.0900 |
| 06/27/24 | 6,000 | $6.2700 |